UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

DARCEE THOMPSON, individually and
on behalf of all others similarly situated,

        Plaintiff,

        v.                                 Case No. 19-cv-150

PROGRESSIVE UNIVERSAL INSURANCE
COMPANY, a Wisconsin corporation,

        Defendant.

## DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY AND COMPEL APPRAISAL

## I.    Introduction

This lawsuit involves a dispute over whether Progressive paid Plaintiff enough money for the total loss of her vehicle.  In December 2018, Plaintiff was involved in a collision that rendered her vehicle a total loss.  Progressive adjusted and paid the loss.  Now, Plaintiff brings this putative class action, alleging that Progressive underpaid her claim and seeking to represent a class of policyholders insured by Progressive.  Specifically, Plaintiff contends that Wisconsin law and her policy requires Progressive to pay her sales tax and vehicle title and registration fees because, she claims, "States in which [Progressive] operates require that cars be properly titled and registered and that cars have proper license plates (or tags)."[1] Compl. ¶ 15.

Plaintiff's own complaint establishes that she has no claim.  She attaches her insurance policy to her complaint and correctly notes that it requires Progressive to "pay Plaintiff the *lesser* of 'the actual

---

[1] Whether insurers must pay sales tax and fees as part of "actual cash value" in some states other than Wisconsin, even if true, is irrelevant to this motion.  At present there is but one plaintiff before the Court, and Wisconsin law indisputably applies to her claims.

cash value' of the stolen or damaged property or the 'amount necessary to replace the stolen or damaged property.'" *Id.* ¶ 14.  Sales tax and fees may be necessary to replace a vehicle, but they are not part of a vehicle's actual cash value.  As her policy provides, "actual cash value" is "determined by the market value, age, and condition of the vehicle at the time the loss occurs."  *Id.*, Ex. A at p.21, ECF 1-1 at p. 26.

Alternatively, if a valuation dispute legitimately remains, it must go to appraisal before this lawsuit can proceed.  Progressive has invoked appraisal to determine the value of Plaintiff's loss, as permitted by the contract of insurance between Progressive and Plaintiff.  Under Wisconsin law, appraisal is mandatory when provided by contract and properly invoked, which undisputedly is the case here.  Accordingly, if the case is not dismissed, the Court should order Plaintiff to proceed with the mandatory appraisal and stay this action.

## II.     **Plaintiff's Factual Allegations**

Plaintiff insured her 2015 Kia Optima with a policy purchased from Progressive.  Compl., ¶ 13.  On December 1, 2018, Plaintiff was involved in an accident that rendered her vehicle a total loss.  *Id.*, ¶¶ 19-20, Ex. B.[2]  Progressive determined the base value of her vehicle at the time of loss was $11,938.10 and, after subtracting her $500 deductible and applying upward adjustments, paid her $11,795.51.  *Id.*, at ¶¶ 21, 23.  Plaintiff does not, and cannot, allege that she complained of Progressive's determination of her vehicle's actual cash value prior to filing this complaint.

Plaintiff alleges that Progressive did not pay her "applicable sales tax or Vehicle Title and Registration fees."  Compl., ¶ 23.   She claims that "[s]tates in which Defendant operates require that cars be properly titled and registered and that cars have proper license plates (or tags).  Thus, the ACV of damaged or stolen vehicles includes Vehicle Title and Registration Fees."  *Id.* at ¶ 15.

---

[2] Plaintiff's Complaint inaccurately states in Paragraph 19 that the underlying loss occurred "[o]n or about June 16, 2015," when in fact the accident occurred on December 1, 2018. This is confirmed by the Vehicle Valuation Report attached to Plaintiff's Complaint as Exhibit B.

Plaintiff's insurance policy provides Progressive's limit of liability in the event of a covered loss:

**LIMITS OF LIABILITY**

1.     The limit of liability for loss to a covered auto, non-owned auto, or custom parts or equipment is the lowest of:

a.     the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;

b     the amount necessary to replace the stolen or damaged property reduced by the applicable deductible;

c.     the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or

d.     the Stated Amount shown on the declarations page for that covered auto.

Compl., Ex. A at pp.19-20, ECF 1-1 at pp. 24-25 (italics added, bold type omitted).  Plaintiff's policy also provides the method for determining "actual cash value":

2.     Payments for loss to a covered auto, non-owned auto, or custom parts or equipment are subject to the following provisions:
                    ***
g.     The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs.

*Id.* at p.21, ECF 1-1 at p.26 (bold type omitted).

Plaintiff's policy also contains a provision for resolving disputes over the value of a loss.

APPRAISAL

If we cannot agree with you on the amount of a loss, then we or you may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party shall appoint a competent appraiser and shall notify the other party of that appraiser's identity. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, we or you may request that a judge of a court of record, in the county where you reside, select an umpire. The appraisers and umpire

-3

will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. You will pay your appraiser's fees and expenses. We will pay our appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, will be shared equally between us and you. Neither we nor you waive any rights under this policy by agreeing to an appraisal.

*Id.* at p. 22, ECF 1-1 at p. 27 (bold type omitted).

Plaintiff asserts two claims. First, she contends that Progressive's failure to include sales tax and vehicle fees as part of her total loss vehicle settlement is a breach of the insurance contract. Second, she seeks a declaration that Progressive is required to pay her sales tax and vehicle fees as a part of her total loss vehicle settlement.

## III.   Law and Argument

### A.   Standard of Review

The Court may dismiss if a plaintiff "fail[s] to state a claim upon which relief can be granted…." Fed. R. Civ. P. 12(b)(6). To survive dismissal, Plaintiffs' Complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Plausibility" is not demonstrated through "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp.*, 550 U.S. at 555. Nor is it demonstrated through "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

Instead, plausibility requires Plaintiffs to plead "factual content that allows the [C]ourt to draw the reasonable inference that [Progressive] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Mere conclusory statements do not suffice. *Id.* And, although the Court must, for the purposes of this Motion, "take all of the factual allegations in the complaint as true," it is not similarly bound with regard to "a legal conclusion couched as a factual allegation[.]" *Id.* Plaintiff must plead definitive facts that allow the Court to "infer more than the mere possibility of misconduct…." *Id.* at 679.

The Court must accept all well-pleaded allegations in the Complaint as true.  And courts are free to consider documents incorporated into the complaint when ruling on a motion to dismiss. *Bogie v. Rosenberg,* 705 F.3d 603, 609 (7th Cir. 2013).   Where a document properly considered on a motion to dismiss contradicts a plaintiff's allegations, the document controls.  *See, e.g., Uebelacker v. Paula Allen Holdings, Inc.,* 464 F. Supp. 2d 791, 804 (W.D. Wis. 2006) (attachments to the complaint trump contradictory allegations); *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n,* 366 F.Supp.2d 792, 796 (W.D. Wis. 2005) (same).

**B.      Interpretation of Plaintiff's Insurance Policy.**

An insurance policy is construed as it would be understood by a reasonable person in the position of the insured. *Frost v. Whitbeck,* 654 N.W.2d 225, 230 (Wis. 2002); *Kremers-Urban Co. v. Am. Employers Ins. Co.,* 351 N.W.2d 156, 163 (Wis. 1984). Provisions in a policy are not to be read in isolation, but rather should be read in the context of the policy as a whole. *Folkman v. Quamme,* 665 N.W.2d 857, 866 (Wis. 2003); *Badger Mut. Ins. Co. v. Schmitz,* 647 N.W.2d 223, 236 (Wis. 2002).  "The contract's words are to be given their common and ordinary meaning, and when the policy language is plain and unambiguous, [courts] enforce the contract as written and without resorting to the rules of construction or principles from [] case law."  *Plastics Eng'g Co. v. Liberty Mut. Ins. Co.,* 759 N.W.2d 613, 620 (Wis. 2009).

**C.      Actual Cash Value Under Plaintiff's Policy Does Not Include Sales Tax or Fees.**

Plaintiff alleges, without citation to any policy provisions, statute, or regulation, that "[u]nder the policy and applicable state law, a total loss ACV includes an obligation to pay sales tax and Vehicle Title and Registration Fees for total loss vehicle collision or physical damage other than collision coverage (full total loss payment)."  Compl., ¶ 11.  This is untrue.

Wisconsin has no statute or regulation requiring the payment of sales tax and fees to insureds when settling a total loss vehicle claim.  Any obligation to pay such sums, therefore, can only come

from the insurance policy.  The policy language, though, establishes that insureds are not entitled to sales tax and fees as part of a total loss actual cash value settlement. The policy provides that Progressive's limit of liability is the "*lowest of . . .* the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible . . . [or] *the amount necessary to replace* the stolen or damaged property reduced by the applicable deductible[.]" *Id.* at p.21, ECF 1-1 at p.26. Replacement of a vehicle may very well require payment of sales tax and title and registration fees, but Progressive's obligation is only to pay the "lowest" of actual cash value or replacement.  Value and replacement cost are distinct, and different, concepts.  *See, e.g.*, Wis. Stat. § 943.20(2)(d) ("Except as otherwise provided in this paragraph, 'value' means the market value at the time of the theft or the cost to the victim of replacing the property within a reasonable time after the theft, whichever is less."); STATE OF WISCONSIN, OFFICE OF THE COMMISSIONER OF INSURANCE, *Consumer's Guide to Auto Insurance* (Feb. 2018) ("Coverage for your vehicle in a personal auto insurance policy is not based on replacement cost. The policy is based on 'actual cash value' of the automobile. The actual cash value (ACV) of the automobile is based on the value of the vehicle at the time of loss, taking into account its current market value."), *available at* https://oci.wi.gov/Documents/Consumers/pi-057.pdf.

Plaintiff alleges that the policy does not define "actual cash value."  Compl., ¶ 16.  The policy does provide the method for determining "actual cash value": "The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs."  Compl. Ex. A at p.21, ECF 1-1 at p.26 (bold type omitted).  Sales tax and fees are not part of the "market value, age, or condition of a vehicle" and are, therefore, irrelevant to the actual cash value of Plaintiff's vehicle at the time of the loss. Taxes do not add value to items upon which taxes are assessed.  *See, e.g., State Farm Mut. Auto. Ins. Co. v. Berthelot*, 732 So. 2d 1230, 1235 (La. 1999) (holding sales tax not part of value of total loss vehicle because "while it may be said that sales tax may increase the cost to the buyer in the retail market, it is equally clear that it does not increase the value of the property

purchased."); *State v. Kluge*, 672 N.W.2d 506, 509 (Iowa App. 2003) (overturning felony conviction where inclusion of sales tax required to move the value of goods stolen from a misdemeanor to a felony because "sales tax is not truly a component of the 'value' of a good or service, but rather a separate amount collected by a retailer for the benefit of a governmental taxing authority."); *Pickering Estate*, 190 A.2d 132, 137 (Pa. 1960) (holding taxes paid on inherited property not part of the value of the inherited property, which  includes only what the beneficiary receives); *Int'l Commer. Co. v. United States*, 26 Cust. Ct. 607, 624-625 (Cust. Ct. 1951) (holding export taxes charged by country of origin are not part of the "market value" of goods for calculating U.S. tariffs).  Thus, they are not part of the "market value" of Plaintiff's vehicle at the time of the loss.  Under the terms of Plaintiff's policy, therefore, Plaintiff was not entitled to sales tax and fees as part of her actual cash value settlement and she has received all to which she is entitled.  Consequently, her complaint fails to state a claim for breach of contract, she is not entitled to the declaratory relief she seeks, and the Court should dismiss Plaintiff's for failure to state a claim.

> **D.     If Not Dismissed, Plaintiff's Claims Are Subject to Stay and Mandatory Appraisal.**

Progressive has invoked its right to mandatory appraisal to decide the amount of Plaintiff's loss.  Because this appraisal process will result in payment of the actual cash value of Plaintiff's loss— assuming that has not already been done—Plaintiff will be fully compensated and her claims will become moot.  If appraisal reveals that Plaintiff has already been paid the actual cash value of her loss, or more, then Plaintiff will have no injury and, thus, no standing to sue.

Wisconsin law expressly authorizes appraisal provisions in insurance policies.  *See* Wis. Stat. § 631.85.  The parties' contract contains such a provision, which provides the method for determining the amount of Plaintiff's loss in the event the parties do not agree as to that amount:

APPRAISAL

> If we cannot agree with you on the amount of a loss, then we or you may demand an appraisal of the loss. Within 30 days of any demand for an appraisal, each party *shall* appoint a competent appraiser and *shall* notify the other party of that appraiser's identity. The appraisers *will* determine the amount of loss. If they fail to agree, the disagreement *will* be submitted to a qualified umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within 15 days, we or you may request that a judge of a court of record, in the county where you reside, select an umpire. The appraisers and umpire *will* determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, *will* be binding. You *will* pay your appraiser's fees and expenses. We *will* pay our appraiser's fees and expenses. All other expenses of the appraisal, including payment of the umpire if one is selected, *will* be shared equally between us and you. Neither we nor you waive any rights under this policy by agreeing to an appraisal.

*Id.* at p. 22, ECF 1-1 at p. 27 (italics and underlining added, bold type omitted).

Although appraisal is an option for either party, in the event either party exercises the appraisal option the process becomes mandatory. *See Farmers Auto Ins. Ass'n v. Union Pacific Ry. Co.*, 2009 WI 73, ¶43, 319 Wis. 2d 52, 73, 768 N.W.2d 596, 607 (2009) (upholding appraisal provision in property insurance contract, finding it to be binding on the insured once invoked by the insurer, and holding that the "appraisal process … is fair to both parties. It allows each to appoint an appraiser of their own liking, with a neutral umpire as the deciding vote. Appraisals also promote finality, are time and cost-efficient, and place a difficult factual question—the replacement value of an item—into the hands of those best-equipped to answer that question. As a form of alternative dispute resolution, the appraisal process is favored and encouraged."); *see also, e.g., Garner v. State Farm Mut. Auto. Ins. Co.*, No. C08-1365, 2008 U.S. Dist LEXIS 120263, *19-20 (N.D. Ca. June 30, 2008) (holding that under policy provision providing either party "may" demand appraisal, appraisal became mandatory once the insurer demanded it); *Lyon v. Am. Family Mut. Ins. Co.*, 617 F. Supp. 2d 754, 758 (N.D. Ill. 2009) (vacated in part on other grounds) ("While [the insured] was thus not required to seek appraisal before

filing suit, the Policy terms dictate that once a party demands appraisal—assuming first that the parties cannot agree on the amount of the loss—the appraisal process becomes mandatory.").

Here, the appraisal provision provides that everything after either party demands appraisal is mandatory and binding. Because Progressive has properly and timely invoked its right to appraisal, Plaintiff's submission to the appraisal process is mandatory and the Court should stay this action until appraisal is complete. *See Veltze v. Bucyrus-Erie Co.*, 791 F. Supp. 1363, 1365–66 (E.D. Wis. 1992) ("The decision to grant a motion to stay proceedings is within the court's discretion . . . The court's power to stay proceedings derives from its power to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.") (internal quotation marks and citations omitted).

Progressive timely invoked appraisal. As Plaintiff alleges, Progressive determined the value of Plaintiff's vehicle, subtracted her deductible, and paid her $11,795.51. Compl., ¶ 24. Plaintiff accepted that payment and now, more than a year later, for the first time voices disagreement with Progressive's valuation of her car. Since receiving her complaint Progressive has informed Plaintiff that Progressive is invoking its right to demand appraisal to resolve the dispute over valuation. *See* Exhibit A (April 19, 2019 letter to Plaintiff's counsel demanding appraisal). Plaintiff has not yet responded to Progressive's appraisal demand.[3]

Progressive does not dispute whether Plaintiff's total loss vehicle claim is covered under the terms of the Policy—Progressive paid the claim. The dispute therefore does not implicate questions of coverage but, rather, solely the value of her loss. Under the express terms of her insurance policy Plaintiff must submit this dispute to appraisal.

---

[3] Progressive could not have invoked its right to appraisal before Plaintiff filed suit because it did not know Plaintiff disputed its valuation of her vehicle prior to receiving her complaint. Plaintiff does not, and cannot, allege that she informed Progressive that she disputed its valuation prior to filing this action.

Appraisal is not only contractually required, but it also promotes judicial economy. *See Farmers Auto Ins. Ass'n v. Union Pacific Ry. Co.*, 319 Wis. 2d at 73, 768 N.W.2d at 607.  If appraisal determines that Plaintiff has already received as much or more than the actual cash value of her vehicle, all her claims will be moot.  The Northern District of California's decision in *Garner*, *supra*, aptly illustrates this point.  The *Garner* plaintiff sued her auto insurer contending that its total loss valuation method did not comply with a California statute governing total loss valuations.  *Garner*, 2008 U.S. Dist LEXIS 120263 at *5-6.  State Farm invoked the appraisal provision in its policy, but the plaintiff argued her claims were not subject to appraisal because they were based upon State Farm's failure to comply with the statutory method of determining her vehicle's value.  *Id.* at *17-19.

The court stated that, however she couched her claims, the dispute was, at its core, over the value of Plaintiff's automobile:

> She claims that, by using an improper method of valuation, Defendant offered to pay her less than her car was worth. She therefore literally disagrees with Defendant that $15,993 represents the actual cash value of her vehicle. For the purposes of interpreting the contractual language, it is immaterial that this disagreement is based on Plaintiff's objection to Defendant's valuation method.

*Id.* at *10.  The court, therefore, compelled the plaintiff to participate in appraisal, noting:

> Staying the action and requiring Plaintiff to submit to an appraisal would not prevent her from litigating her broader claims, assuming the value of her vehicle is actually greater than what Defendant offered to pay for it. If an appraisal demonstrates that Defendant's offer was in fact less than the actual cash value of Plaintiff's car, she may proceed with this action. Alternatively, if an appraisal determines that Defendant's settlement offer was equal to or greater than the actual cash value of Plaintiff's vehicle, it may demonstrate that Plaintiff lacks standing to sue. It would be preferable to resolve any such standing issue early in these proceedings.

*Id.* at *20.

The same is true here.  If appraisal determines that Progressive has already paid Plaintiff all to which she is entitled, or more, she lacks standing to pursue her claims in the first instance.  If appraisal

-10

determines that Progressive underpaid her claim in determining its actual cash value, the appraisal process will result in an award providing her the shortfall.

For these reasons, Progressive respectfully requests that the Court enforce the terms of Plaintiff's insurance policy, order her to participate in appraisal, and stay this action pending the outcome of the appraisal process.

**IV.    Conclusion.**

Plaintiff's claim that she is entitled to sales tax and vehicle fees as part of her actual cash value statement is contradicted by the express terms of her policy.  Her complaint fails to state a claim and should be dismissed.

Alternatively, the Court should compel Plaintiff to participate in the appraisal process required by her insurance policy, and stay this action pending the result of that process.

Dated this 2nd of May, 2019.                          Respectfully submitted,

                                                       BAKER & HOSTETLER LLP

                                                       *s/ Casie D. Collignon*
                                                       Casie D. Collignon
                                                       ccollignon@bakerlaw.com
                                                       Justin T. Winquist
                                                       jwinquist@bakerlaw.com
                                                       Sammantha J. Tillotson
                                                       stillotson@bakerlaw.com
                                                       1801 California Street, Suite 4400
                                                       Denver, CO  80202-2662
                                                       (303) 861-0600

                                                       Rodger L. Eckelberry
                                                       REckelberry@bakerlaw.com
                                                       200 Civic Center Drive, Suite 1200
                                                       Columbus, OH 43215-4138
                                                       (614) 462-5189

Gregory T. Everts (WI SBN: 1001636)
gregory.everts@quarles.com
Quarles & Brady LLP
33 East Main Street, Suite 900
Madison, WI 53703
(608) 251-5000

*Attorneys for Defendant Progressive Universal Insurance*
*Company*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing **DEFENDANT'S**

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE**

**ALTERNATIVE, MOTION TO STAY AND COMPEL APPRAISAL** was served via the

Court's ECF system on all counsel of record on this 2nd day of May, 2019.


*/s/ Casie D. Collignon*