UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

Darcee Thompson, individually and
on behalf of all others similarly situated,
        Plaintiff,

v.                                                                         Case No. 19-cv-150

Progressive Universal Insurance Company, a
Wisconsin corporation,

        Defendant.

---

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO STAY DISCOVERY, OR, IN THE ALTERNATIVE, TO BIFURCATE DISCOVERY

---

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, Progressive Universal Insurance Company ("Progressive") moves this Court to stay discovery and other proceedings in this case pending this Court's ruling on its Motion to Dismiss or, in the Alternative, Motion to Stay and Compel Appraisal ("Motion to Dismiss"). In the alternative, Progressive moves to bifurcate discovery so that it focuses, as an initial matter, on Plaintiff's individual claim alone. In support of its Motion, Progressive states as follows:

### CERTIFICATE OF CONFERRAL

On October 18, 2019, Progressive's counsel conferred in good faith with Plaintiff's counsel in an effort to reach an agreement or stipulation to present to the court that would avoid this motion. No such agreement could be reached.

### RELEVANT BACKGROUND AND PROCEDURAL POSTURE

On March 5, 2019, Plaintiff filed her Class Action Complaint ("Complaint"). ECF No. 1. Plaintiff's putative nation-wide Complaint alleges that Progressive unlawfully failed to pay Plaintiff and class members—insureds under Progressive automobile policies—sales tax and vehicle title and

4813-3392-6547.1

registration fees as part of total loss settlements when it purportedly omitted these elements from its actual cash value ("ACV") determinations of totaled vehicles. Compl. ¶ 3. Plaintiff specifically claims that (1) she was involved in an automobile accident while driving an insured vehicle, (2) after the accident, she filed a claim for property damage with Progressive, (3) Progressive calculated the ACV of Plaintiff's vehicle, less her applicable deductible, to be $11,795.51, but did not include sales tax or vehicle registration fees in its ACV calculation, and (4) Progressive paid Plaintiff this amount for her loss. Compl. ¶¶ 19-23. Plaintiff submitted a copy of her insurance policy with her Complaint. ECF No. 1-1 (Ex. B to Compl.).

On May 2, 2019, Progressive filed its Motion to Dismiss (ECF No. 13), based upon Plaintiff's failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6) or, in the alternative, to stay the litigation pending the outcome of Progressive's demand for appraisal. *See* Brief in Support of Defendant's Motion to Dismiss, ECF No. 14 at 1-2, 5-11. This motion turns on straightforward questions of law; namely, whether Plaintiff can properly maintain causes of action for breach of contract and declaratory relief based on her allegation that Progressive, in adjusting her total loss claim, "failed to include sales tax and [v]ehicle [t]itle and [r]egistration [f]ees in its payments to Plaintiff" (Compl. ¶ 50) when (1) Wisconsin has no statute or regulation requiring the payment of sales tax and fees to insureds when settling a total loss vehicle claim, and (2) Progressive's policy language establishes that insureds are not entitled to sales tax and fees as part of a total loss actual cash value settlement. *See id.* at 5-7.

On June 7, 2019, the Court entered its Preliminary Pretrial Conference Order. ECF No. 29. In this Order, the Court stayed all discovery "until the court rules on the pending dismissal motion or until August 30, 2019, whichever comes first." *Id.* As of the date of this filing, the stay of discovery has expired and the Court has not yet ruled on Progressive's Motion to Dismiss. On September 27, 2019, Plaintiff propounded written discovery requests to Progressive. **Exhibit A** (Plaintiff's First Set

4813-3392-6547.1
4822-1153-8837.2
4841-8903-2362.1

of Interrogatories); **Exhibit B** (Plaintiff's First Request for Production of Documents) (collectively the "Discovery Requests").

## LEGAL STANDARD

Under Rule 26(c), this Court has broad authority to limit the scope of discovery or to control its sequencing for "good cause." Fed. R. Civ. P. 26(c); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) ("District courts have broad discretion in matters relating to discovery."); *Oneida Nation v. Vill. of Hobart, Wisconsin*, No. 16-C-1217, 2017 WL 3025932, at *2 (E.D. Wis. Apr. 19, 2017). This "broad discretion and inherent power" can be exercised "to stay discovery until preliminary questions that may dispose of the case are determined." *Orlando Residence, Ltd. v. GP Credit Co., LLC*, No. 04-C-439, 2006 WL 2849866, at *7 (E.D. Wis. Sept. 29, 2006).

Courts regularly stay discovery "when a pending dispositive motion can resolve the case and [] requested discovery is unlikely to produce facts necessary to defeat the motion." *Oneida Nation*, 2017 WL 3025932, at *2 (internal citations and quotation marks omitted); *Orlando Residence, Ltd.*, 2006 WL 2849866, at *7 ("Limitations on pretrial discovery are appropriate where claims may be dismissed 'based on legal determinations that could not have been altered by any further discovery.'"); *Builders Assoc. v. Chicago*, 170 F.R.D. 425, 437 (N.D. Ill. 1996) (collecting cases)). Indeed, stays are "granted with some frequency" and "often deemed appropriate where [a] motion to dismiss can resolve a threshold issue such as jurisdiction [or] standing [] or where . . . discovery may be especially burdensome and costly to the parties." *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08 CV 1531, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008) (citing *Syngenta Seeds, Inc. v. BTA Branded, Inc.*, No. 05 C 6673, 2007 WL 3256848, at *1 (N.D. Ill. Nov.1, 2007); *In re Graphics Processing Units Antitrust Litigation*, MDL No. 1826, 2007 WL 2127577, at *4 (N.D. Cal. July 24, 2007)).

This is particularly true in "complex" cases that "will entail burdensome and costly discovery." *Coss v. Playtex Prod., LLC*, No. 08 C 50222, 2009 WL 1455358, at *2 (N.D. Ill. May 21, 2009) (the

Seventh Circuit [has] recognized the need to limit overly burdensome discovery in complex cases . . . in which a motion to dismiss for failure to state a claim ha[s] been filed") (collecting cases); *DSM Desotech*, 2008 U.S. Dist. LEXIS 87473, at *3, 2008 WL 4812440 (holding that the principles underlying the United States Supreme Court's decision in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1966-97, 167 L.Ed.2d 929 (2007), required a stay on discovery during the pendency of a motion to dismiss for failure to state a claim brought under antitrust laws); *In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 336 (N.D. Ill. 2005) ("Numerous cases in [the Seventh Circuit] have allowed stays in the face of a Rule 12(b)(6) challenge.")(collecting cases). As the Supreme Court and Seventh Circuit have recognized, there is strong policy favoring the entry of a stay of "overly burdensome discovery in complex cases" where "a motion to dismiss for failure to state a claim has been filed." *See Coss*, 2009 WL 1455358, at *2 (citing *Limestone Dev. Corp. v. Village of Lemont, Illinois et al.*, 520 F.3d 797, 803 (7th Cir. 2008)).

## **ARGUMENT**

A stay of discovery is appropriate in this case for at least two reasons. First, if the relief sought in Progressive's Motion to Dismiss is granted, the case will likely be disposed of in its entirety. As set out fully in Progressive's Motion to Dismiss, Plaintiff's claim that she is entitled to sales tax and vehicle fees as part of her actual cash value is contradicted by the express terms of her policy therefore she has failed to state a claim under Fed. R. Civ. P. 12(b)(6). If granted on this ground, Progressive's Motion to Dismiss would dispose of the entire case. In fact, even if Progressive's alternative prayer for relief to compel appraisal and stay this litigation were granted, the litigation would be prevented from proceeding and the outcome of the appraisal could dispose of the entire case by revealing that Plaintiff has no standing to sue.

Second, this case is a putative nation-wide class action distinctly falling into the category of "complex" litigation where Plaintiff has propounded extremely broad, burdensome Discovery

4813-3392-6547.1
4822-1153-8837.2
4841-8903-2362.1

Requests that will require considerable time and expense to answer. Thus, staying discovery in these circumstances will save the parties and the Court significant time and resources that discovery and class motion practice would require.

### A. Ruling on Progressive's Motion to Dismiss is Likely to Resolve the Case.

As fully set out in Progressive's Motion to Dismiss, Plaintiff's claims fail under Fed. R. Civ. P. 12(b)(6) because her theory that she is entitled to sales tax and vehicle fees as part of her actual cash value is contradicted by the express terms of her policy and otherwise unsupported by Wisconsin law. *See id.* at 5-7, 10. Progressive has already paid Plaintiff what she is owed. *See* Order Granting Defendant's Rule 12(b)(6) Motion to Dismiss, *Singleton et al. v. Elephant Ins. Co.*, Case No. 6:19-CV-00200-ADA, at 5 (W.D. TX May 10, 2019) (**Exhibit C**)(dismissing nearly identical claims and finding that ACV did not include sales tax or registration fees); *Sigler v. Geico Cas. Co.*, 2019 U.S. Dist. LEXIS 82431, *10, 2019 WL 2130137 (C.D. Ill. May 15, 2019) (dismissing nearly identical claim on analogous facts based on finding that the plaintiff had failed to state a claim for breach of contract because the policy at issue did not promise to pay particular costs, including taxes and registration fees, before these costs were incurred).

Alternatively, in its Motion to Dismiss, Progressive has moved the Court to compel Plaintiff to participate in the appraisal process required by her insurance policy, and stay this action pending the result of that process. *Id.* at 7-10. Progressive has invoked mandatory appraisal to decide the amount of Plaintiff's loss. *Id.*; *see also* Wis. Stat. § 631.85 (expressly authorizing appraisal provisions in insurance policies). Because this appraisal process will result in payment of the actual cash value of Plaintiff's loss—assuming that has not already been done—Plaintiff will be fully compensated and her claims will become moot. Brief in Support of Defendant's Motion to Dismiss at 7-10. If appraisal reveals that Plaintiff has already been paid the amount of her loss even including any amounts she claims for taxes and fees, or more, then Plaintiff will have no injury and, thus, no standing to sue. *Id.*

-5-

In sum, Progressive's Motion to Dismiss, if granted on either alternative ground, would dispose of the entire case. Given that each issue can be resolved through a review of the Plaintiff's insurance policy, which she attached to her Complaint (ECF No. 1-1), no additional discovery is needed to allow the Court to decide these threshold dispositive issues. These circumstances weigh in favor of a stay of discovery pending ruling on the Motion to Dismiss.

> **B. Plaintiff's Overly Broad, Burdensome, and Costly Discovery should be Limited in this Complex Putative Nation-Wide Class Action Case Prior to Ruling on Progressive's Motion to Dismiss.**

A stay is also appropriate because this is a "complex" case that "will entail burdensome and costly discovery." *See, e.g.*, *Coss*, 2009 WL 1455358, at *2. United States Supreme Court and Seventh Circuit precedent requires federal district courts to "carefully consider the potential discovery needed in complex cases." *Id.* at *3. While "complex" was originally a term assigned to suits sounding in antitrust claims, this term has been expanded beyond this line of cases to other contexts, including putative nation-wide class action claims like those Plaintiff asserts here. *See id.* (citing *Lantz et al. v. Am. Honda Motor Co.*, Inc., 2007 U.S. Dist. LEXIS 3948, at *3, 2007 WL 1424614 (N.D. Ill. May 14, 2007); *Hill v. Chase Bank, NA et al.*, 2007 U.S. Dist. LEXIS 87369, *13, 2007 WL 4224073 (N.D. Ind. Nov. 26, 2007) (granting stay of discovery in action alleging class claims arising under the Truth in Lending Act)).

For instance, in *Coss*, the Northern District of Illinois held that a stay of discovery was appropriate in a putative class action case arising from alleged defects in baby bottles sold by the defendant. *Coss*, 2009 WL 1455358, at *1. There, the court reasoned that it was appropriate to limit discovery in light of the defendant's filing of a motion to dismiss for failure to state a claim because the case was "complex" and "one suspectable to burdensome and costly discovery." *Id.* at *2. In coming to this conclusion, the court considered the fact that the plaintiff purported to "represent a

class with members located in 13 states," alleged causes of action "arising under 15 statutes," and estimated her "damages to exceed $5 million." *Id.* at *4.

Here, Plaintiff has alleged putative nation-wide class claims for breach of contract and declaratory relief on behalf of a proposed class consisting of:

> All individuals and entities insured by Progressive with insurance that covers a vehicle with private-passenger physical damage coverage, including collision or physical damage other than collision coverage, who made a first party claim that was adjusted by Progressive as a total loss and who received an actual cash value payment from Progressive that did not include an amount for sales tax and/or Vehicle Title and Registration Fees.

Compl. ¶ 29. Plaintiff's proposed class definition is not limited by time or geography and purports to include both individual and business insureds. *See id.* Plaintiff alleges that her claims raise a number of questions including whether each of the proposed class members were "owed sales tax and Vehicle Title and Registration Fees as part of the ACV payment upon the total loss of an insured vehicle" under the terms of their policy and whether Progressive complied with the terms of each proposed class member's respective policy provisions. *Id.* ¶ 33. These questions are purportedly raised with respect to a facially invalid nation-wide putative class without a time limit. *Id.* ¶¶ 29, 33. It necessarily follows that Plaintiff is seeking to raise questions of Progressive's compliance with contract law in all states where Progressive does business.

Within this pleading framework, Plaintiff has propounded her first Discovery Requests, which demonstrate the extremely burdensome, expensive, and time-consuming discovery Plaintiff seeks. The majority of the Discovery Requests seek responsive information for "all insureds" during the "Class Period," which is defined as "five (5) years prior to the date the Complaint was filed until present," though some specifically provide that there is no time limit applicable to the request. Ex. A (Interrogatories) at Instructions ¶ 4, Definitions ¶ 5; Ex. B (Requests for Production) at Instructions ¶ 5, Definitions ¶ 5, Request for Production No. 6 ("This request is not limited by the Class Period.").

Effectively, Plaintiff seeks documents and interrogatory responses for all individual and business insureds across all states from March 5, 2014, to present for the vast majority of requests.

A review of the Discovery Requests reveals that the they will require Progressive to expend significant time, money, and resources to answer.[1] As an example, Interrogatory 1 asks for a narrative explanation of every "policy, practice, and procedure" for Progressive's "payment (or non-payment) of Tag and Title fees on [Private Passenger Auto ("PPA")] physical damage total loss claims" as well as any change made to such policies, practices, and procedures including detailed circumstances of when Progressive will defer payment, pay claims, descriptions of policy provisions, confirmation of whether payments are made for title and tag fees, the amount of payments or calculation methods, and a description of any "difference in practice and procedure based on the applicable PPA Policy in each state in which" Progressive has done business. Ex. A at Interrogatory 1. In another example, Interrogatory 2 calls for "each and every first-party PPA physical damage total loss claim" made to Progressive including identification of the insured, policy, claim number, date of loss, all tax payments, all tag and title fees paid, VIN number, and date and amount of "each and every component of payment made to the insured." *Id.* at Interrogatory 2. Plaintiff goes on to further request narrative responses describing comprehensive information about persons who were "involved" in adjusting covered PPA physical damage total loss claims, a wide breadth of information related to Progressive's data systems, and identification of the number of individuals who were paid or not paid tax, tag, or title fees broken down by state. *Id.* at Interrogatories 3-11.

---

[1] The Discovery Requests propounded by Plaintiff are objectionable on a number of grounds including but not limited to overbreadth, disproportionality, undue burden, relevance, improper form, and preemptive and improper class discovery. Herein, Progressive seeks only to provide the Court with a broad overview of the burdensome, costly nature of the Discovery Requests. Progressive does not waive its right to assert any and all applicable objections to the Discovery Requests.

The Requests for Production assert similar extremely burdensome and costly requests. For instance, Plaintiff seeks "all documents" that "identify all Tag and Title fees, or other fees that are included (or not included) as part of first-party PPA physical damage total loss claims, including guides, charts, or reference documents used by adjusters, sales representatives, salvage representatives, or other employees" in all states from March 5, 2014, to present as well as "exemplars of any subparts, addenda, amendments, or endorsements to the Policies or forms that relate in any way to the payment or nonpayment of Actual cash value and/or Tag and Title fees on insured total loss vehicles." Ex. B at Request for Production 1 and 4. The Requests also ask for: (1) "[a]ll Documents that set forth or explain [Progressive's] practices and procedures for paying (or not paying) and for calculating ACV and/or Tag and Title Fees on first-party PPA physical damage total loss claims," (2) communications with regulatory bodies concerning "ACV and total loss claims" and "whether Tax, Tag and Title fees are or should be covered" (without time limit), (3) "all documents relating to any insured requesting payment (complaining about lack of payment for Tax, Tag and Title Fees, or asking whether Tax, Tag and Title fees are covered under their total loss claim, or expressing disagreement . . .) ," (4) extensive training materials for Progressive employees and salvage specialists, (5) all claims and underwriting communications concerning Progressive's policy of paying tax, title, and tag fees, (6) all documents related to any differences between all physical damage policies with respect to tax, title, and tag fees, and (7) exemplars of "all form Communications and disclosures" made by Progressive to its insureds in any state. *See* Ex. B at Requests for Production 5-29.

Further illustrating the breadth of information requested by Plaintiff, Request for Production 20 alone, seeks the following:

> **REQUEST FOR PRODUCTION NO. 20**
> All data identifying, for each PPA physical damage total loss Claim, the following:
> a. Claim number;
> b. Name and address of owner or lessee of loss vehicle;

-9-

c. Titled owner of the loss vehicle;
d. Policy number;
e. Insured name and address;
f. Adjuster ID;
g. Adjuster name;
h. Loss location;
i. Date of loss;
j. All Loss vehicle information;
k. Loss vehicle VIN number;
l. Loss vehicle's Actual cash value;
m. Deductible (and whether applied, waived, or reimbursed);
n. Whether the vehicle was leased;
o. Name of lessor (if applicable);
p. All sales tax paid or sales tax calculated even if not paid;
q. All Title and Tag Fees, or other fees paid, or Title and Tag Fees or other fees calculated but
not paid;
r. Owner retained or insurer retained salvage;
s. Whether claim was for comprehensive or collision coverage;
t. All lienholders and lien amounts;
u. All payment data (including claim number, claim symbol, rated state, FCC, loss date, entry date/time, transaction amount, used-ID, check number, company, Payee 1, Payee 2, Mail Address, Mail Address 1, Mail Address 2, Mail Address 3, Reason for Payment, Memo 1, Memo 2, Memo3, Memo4, payment amounts, dates);
v. All lienholder data including lienholder name, lienholder account number, lienholder address 1, lienholder address 2, lienholder address 3, lienholder city, lienholder state.
w. All title and salvage information including data in any special instructions field, GAP insurance indicator, owner equity amount, lienholder amount paid, lienholder amount owed, per diem, title held by lienholder, title state, verify title names data, title owner first name, title owner middle name, title owner last name, primary title name, verify payoff amount data, and payoff good until data.
x. All data identifying additional interests, and additional interest names, including all data that identifies additional insured, lienholders, and other additional interests;
y. All claims payment data including payment date, amount, payee, reason for payment, (e.g., ACV, sales tax, Tag and Title fees, registration fees, government fees, personal property reimbursement, towing payment/reimbursement, vehicle breakdown, rental vehicle, etc.), and coverage for which payment was made (e.g., collision or PIP), and
z. And other data relating to the first-party PPA physical damage total loss claim.

4813-3392-6547.1
4822-1153-8837.2
4841-8903-2362.1

*Id.* at Request for Production 20. This Request for Production is then followed by requests that Progressive produce "[d]ocuments sufficient to identify the data fields and field definitions for all data maintained by [Progressive] for first-party PPA physical damage total loss claims" as well as a "random" sample of "1,000 claim files of first-party insureds with PPA physical damage total loss claims during the Class Period." *Id.* at Requests for Production 21 and 27.

These far-reaching, extremely broad requests could not be answered without the expenditure of substantial amounts of time, money, and resources on Progressive's part. Indeed, if Progressive were to precisely respond, Progressive would be forced to conduct a comprehensive, nation-wide document assessment, individually review files and data for its individual and business insureds across the country that made a total loss vehicle claim, aggregate and analyze its policy language in all states where it writes business, aggregate and analyze policy addendums and endorsements as well as similar documents, comprehensively analyze its training programs and all employees who participated in the adjustment of applicable total loss claims, identify and pull extensive data for applicable total loss claims since March 5, 2014, identify and pull all regulatory correspondence concerning total loss vehicle claims, aggregate massive amounts of data including the twenty-six categories of information Plaintiff requests with respect to the putative nation-wide class in Request for Production 20, and pull and review 1,000 claim files for potential production.

This list is not meant to be exhaustive. The burden upon Progressive in answering these requests would be heavy and far-reaching. In short, this is a "big," "complex" case that Progressive "should not be put to the expense of [] on the basis of a threadbare claim" that is unlikely to survive Progressive's Motion to Dismiss. *See Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008). As in *Coss*, here a stay of discovery is appropriate in this putative nation-wide class action case where Plaintiff has alleged damages in excess of $5 million, asserted claims that raise legal questions arising from breach of contract law and declaratory relief under the law of all 50 states, and

-11-

raised individualized factual questions that she seeks to answer through extensive, expensive, and time-consuming nation-wide class discovery.

## **CONCLUSION**

WHEREFORE, Progressive respectfully requests that this Court stay discovery and other proceedings in this case pending a ruling on Progressive's Motion to Dismiss Plaintiff's Complaint or, in the alternative, limit discovery in the first round to the merits of Plaintiff's individual claim only.

Dated this 18th day of October, 2019.

    Respectfully submitted,

    BakerHostetler

    *s/ Rodger Eckelberry*
    Rodger Eckelberry
    200 Civic Center Drive | Suite 1200
    Columbus, OH 43215-4138
    (614) 462-5189
    REckelberry@bakerlaw.com

    *s/ Casie D. Collignon*
    Casie D. Collignon
    ccollignon@bakerlaw.com
    Justin T. Winquist
    jwinquist@bakerlaw.com
    Sammantha J. Tillotson
    stillotson@bakerlaw.com
    1801 California Street
    Suite 4400
    Denver, CO 80202-2662
    (303) 861-0600

    Quarles & Brady LLP

    *s/ Gregory T. Everts*
    Gregory T. Everts (WI SBN: 1001636)
    33 East Main Street, Suite 900
    Madison, WI 53703
    (608) 251-5000
    gregory.everts@quarles.com

    *Attorneys for Defendant*
    *Progressive Universal Insurance Company*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO STAY DISCOVERY, OR, IN THE ALTERNATIVE, TO BIFURCATE DISCOVERY** was served via the Court's ECF system on all counsel of record on this 18th day of October, 2019.

/s/ Casie D. Collignon