IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DARCEE THOMPSON,

                             Plaintiff,

      v.

PROGRESSIVE UNIVERSAL INSURANCE
COMPANY,

                             Defendant.

OPINION AND ORDER

19-cv-150-wmc

On behalf of herself and others similarly situated, plaintiff Darcee Thompson brings a claim against defendant Progressive Universal Insurance Company for failing to pay the sales taxes, title and registration fees on a replacement vehicle under the terms of her automobile insurance policy.  Before the court is defendant's motion to dismiss plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6) (dkt. #13), which will be granted for the reasons that follow.

BACKGROUND[1]

Thompson's 2015 Kia Optima LX was insured under the terms of her policy with Progressive, which she attaches as Exhibit A to her complaint.  (Compl. (dkt. #1) ¶ 13 & Ex. A.)  Specifically, Progressive agreed to pay Thompson the *lesser* of "the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible" *or* "the amount necessary to replace the stolen or damaged property reduced

---

[1] In resolving a motion to dismiss under Rule 12(b)(6), the court takes all factual allegations in the complaint as true and draws all inferences in plaintiff's favor.  *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007).  Because the policy at issue attached to the complaint as "Exhibit A," its terms and definitions are "part of the pleading for all purposes."  Fed. R. Civ. P. 10(c).

by the applicable deductible." (Compl., Ex. A (dkt. #1-1) 19.)  The policy further provides that "actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurred."  (*Id.* at 21.)

Thompson was involved in a collision on June 16, 2015 (Compl. (dkt. #1) ¶ 19), which the parties agree rendered her new Optima a total loss (*id.* ¶ 20).  After investigating, Progressive purported to pay Thompson the actual cash value ("the ACV") of the vehicle under her policy as determined by its market value, age, and condition at the time of the accident reduced by the applicable deductible.  (*Id.* ¶ 25.)  As calculated by Progressive, however, neither sales tax nor title and registration fees imposed in purchasing a replacement vehicle were incorporated into its definition of market value.  (*Id.* ¶ 23.)[2] Thompson maintains that the failure to include the tax and fees constitutes a breach of the policy.

OPINION

A motion to dismiss under Rule 12(b)(6) is designed to test the complaint's legal sufficiency.  *See* Fed. R. Civ. P. 12(b)(6).  The court must "constru[e] the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor."  *Hecker v. Deere & Co.*, 556 F.3d

---

[2] After October 1, 2019, the fee for transfer of title in Wisconsin is $164.50 and $85 for registration, plus possible wheel taxes.  "Fee Schedule," State of Wis., Dept. of Transportation, https://wisconsindot.gov/Pages/dmv/vehicles/title-plates/fee-chart.aspx (last visited Nov. 13, 2019). Wisconsin also collects a 5% state sales tax rate on the purchase of all vehicles, although there may also be county taxes of up to 0.5%, and a stadium tax of up to 0.1%.  "Tax Rates," State of Wis., Dept. of Revenue, https://www.revenue.wi.gov/Pages/FAQS/pcs-taxrates.aspx (last visited Nov. 13, 2019).

575, 580 (7th Cir. 2009).  Dismissal is warranted only if no recourse could be granted under any set of facts consistent with the allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

To survive a motion to dismiss, therefore, a plaintiff need only allege sufficient facts to state a plausible claim for relief.  *Spierer v. Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (citing *Twombly*, 550 U.S. at 570).  Still, "when it is 'clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law,' dismissal is appropriate."  *Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

Here, Progressive argues that dismissal of plaintiff's claim is compelled by the unambiguous definition of ACV in the policy, which includes no reference to sales tax nor registration fees.  (Def.'s Br. (dkt. #14) 6.)  In response, Thompson argues that ACV is *not* defined by the policy, "but rather only lists factors that are included in calculating ACV, none of which *eliminates* Progressive's liability for sales tax or vehicle title and registration fees."  (Pl.'s Opp'n (dkt. #19) 1 (emphasis added).)  If Progressive is right, then the unambiguous definition in the insurance policy should control and its motion to dismiss should be granted.  On the other hand, if the language in the insurance policy "is susceptible to more than one reasonable interpretation," then Progressive's motion must be denied because:  "(1) evidence extrinsic to the contract itself may be used to determine the parties' intent and (2) ambiguous contracts are construed against the drafter" and "in favor of the insured."  *Coppins v. Allstate Indem. Co.,* 2014 WI App. 125, ¶ 24, 359 Wis. 2d

3

179, 857 N.W.2d 896 (quoting *Folkman v. Quamme*, 2003 WI 116, ¶¶ 12-13, 264 Wis. 2d 617, 665 N.W.2d 857).

Plaintiff supports her reading of ACV, and more particularly "market value," by pointing to case law, which she claims demonstrates that market value must include replacement cost.  The cases plaintiff cites for support, however, are distinguishable.  First, plaintiff cites two Seventh Circuit cases to demonstrate that ACV includes replacement cost, but neither case concerns measuring ACV in the insurance context.  *See United States v. Draves*, 103 F.3d 1328 (7th Cir. 1997) (concerning a criminal case litigating over credit card fraud); *United States v. Crown Equipment Corp.*, 86 F.3d 700 (7th Cir. 1996) (determining actual damages by market value in the context of commodities taken into government possession for price control purposes).

Second, plaintiff cites to several cases from Wisconsin, the Seventh Circuit, and other jurisdictions that concern the interpretation of insurance policies that, unlike the policy at issue, did *not* define ACV whatsoever.  For example, plaintiff cites *Wisconsin Screw Company v. Firemen's Fund Insurance Company*, 297 F.3d 697 (7th Cir. 1962), a case in which the Seventh Circuit held under Wisconsin law that ACV in an insurance policy *could* be determined by considering replacement cost if ACV is not defined.  *Id.* at 700; *see also Sos v. State Farm Mut. Auto. Ins. Co.*, No. 6:17-cv-890-Orl-40KRS, slip op. at *7 (M.D. Fla. Mar. 13, 2019) (analyzing policy that did not define ACV); *Doelger & Kirsten, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 42 Wis. 2d 518, 521, 167 N.W.2d 198 (Wis. 1969) (same); *Coppins,* 2014 WI App 125 (same).

Unlike these cases, the policy here explicitly states that ACV is "determined by the market value, age, and condition of the vehicle at the time the loss occurred." (Compl. Ex. A (dkt. #1-1) 21.)  While the above cases support the general proposition that ACV *may* include replacement costs in the absence of a definition, these cases do not support the proposition that a policy that defines ACV must include replacement costs, especially where the policy at issue considers an alternative basis for recovery of replacement costs at Progressive's election.

Similarly, the fact that the Wisconsin Commissioner of Insurance in a 20-year-old market conduct report recommended to an insurance company that sales tax should be included in an all-inclusive settlement of a totaled vehicle holds little persuasive weight in evaluating the specific policy language at issue, which defines ACV in a manner that distinguishes it from replacement costs.  (Pl.'s Opp'n (dkt. #19) 8-9.)  Moreover, as defendant points out, the report does not even describe the terms and conditions of the policy under consideration by the Commissioner and, therefore, there is no basis for finding that the policy language was at all similar to the disputed language in the policy here.[3]

As for the cases that plaintiff relies upon that *do* define ACV, the definitions expressly *include* replacement costs.  For example, in *Mills v. Foremost Insurance Company*, 511 F.3d 1300 (11th Cir. 2008), the Eleventh Circuit considered a policy that defined ACV as "'the cost to repair or replace property with new materials of like kind and quality' less certain depreciation."  *Id.* at 1305; *see also Roth v. GEICO Gen. Ins. Co.*, no. 16-62942-

---

[3] Certainly, the report articulates a compelling policy reason for requiring reimbursement of sales tax and registration fees, but there is no statutory or regulatory requirement in Wisconsin to do so.

Civ-DIMITROULEAS, 2018 WL 3412852, *3 (S.D. Fla. June 13, 2019) (discussing a policy that defines ACV as "the replacement cost of the auto or property less depreciation or betterment"); *Bastian v. United Serv. Auto. Ass'n.*, 150 F. Supp. 3d 1284, 1289 (M.D. Fla. 2015) (discussing a policy that defines ACV of a vehicle as "the amount it would cost, at the time of loss, to buy a comparable vehicle."); *Lukes v. Am. Family Mut. Ins. Co.*, 455 F. Supp. 2d 1010, 1015 (D. Ariz. 2006) (discussing a policy that defines ACV as "the amount which it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence").

Conversely, the policy at issue expressly distinguishes between the ACV as determined by market value and a replacement amount by stating that Progressive may pay the *lesser* of the two in the event of a total loss. The remainder of the case law that plaintiff relies on similarly defines ACV by way of state statutes or precedent that do not apply to the policy in question. *See Lowery v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 805 F.3d 204, 209 (5th Cir. 2015) (referencing FEMA's Standard Flood Insurance Policies' definition of ACV); *Ghoman v. New Hampshire Ins. Co.* 159 F. Supp. 2d 928, 934 (N.D. Tex. 2001) (holding that, under Texas law, ACV is synonymous with fair market value, which the court interpreted to mean replacement cost minus depreciation where the policy did not define ACV); *Albert v. Nationwide Mut. Fire Ins. Co.*, No. Civ.A.3991953, 2001 WL 34035315, *4 (M.D. Pa. May 22, 2001) (applying the definition of ACV previously determined by Pennsylvania courts: "the cost of replacement less depreciation for age, deterioration and 'wear and tear'."); *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 435

(Fla. 2013) ("actual cash value is generally defined [as] 'fair market value' or '[r]eplacement cost minus normal depreciation'" under Florida law); *Holden v. Farmers Ins. Co.*, 239 P.3d 344, 346 (Wash. 2010) (concerning a policy that defined ACV to include fair market value, which the court determined to include replacement cost under Washington law).[4]  For these reasons, while plaintiff cites an array of cases, none of them resolve plaintiff's claim.

In contrast to plaintiff's numerous readily distinguishable precedents, defendant cites to the one decision that appears closest to being on all fours with the policy language at issue here.  In *Singleton v. Elephant Insurance Company*, CIVIL No. 6:19-CV-00200-ADA, slip op. at *1-*2 (W.D. Tex. May 10, 2019), plaintiffs brought a breach of contract claim against a vehicle insurance company under Texas contract law seeking payment of sales taxes and registration fees of new vehicles following the total loss of their insured vehicles. *Id.*  The policy in the *Singleton* case, like the policy currently in question, stated that the insurer would pay the lesser of the ACV or the replacement cost, *id.* at *1, *and* that ACV is determined by considering the "market value, age, and condition of the auto" at the time of the loss, *id.* at *5.  Moreover, as in Wisconsin, no applicable state statute required the payment of sales tax or additional fees in Texas.  *Id.* at *6.

Given the definition in the policy, the *Singleton* court held that the term ACV was not ambiguous because the meaning of "market value" had been clearly defined by Texas

---

[4] Plaintiff also cites two Colorado cases to support its contention that defendant was required to pay sales tax and registration fees.  Unlike Wisconsin, however, Colorado has a statute expressly requiring insurers to do so.  Colo. Rev. Stat. § 10-4-639(1); *see Carter v. Amica Mut. Ins. Co.*, No. 17-cv-02156-RM-MEH 2018 WL 3093320, *4-*5 (D. Colo. June 22, 2018) (referencing a Colorado statute that requires insurers to include sales taxes and registration fees when calculating ACV); *Pearson v. Geico Cas. Co.*, No. 17-CV-02116-CMA-MEH, 2018 WL 2096348 (D. Colo. May 7, 2018).

courts as "the price property would bring when it is offered for sale by one who desire, but

is not obligated to sell, and is bought by one who is under no necessity of buying it." *Id.*

(citing *Exxon Corp. v. Middleton*, 613 S.W.2d 240, 246 (Tex. 1981)).  The court also rejected

the plaintiff's argument that the availability of various approaches for determining "market

value" renders the term ambiguous, explaining that the automobile market is not an

unusual or limited market requiring a unique approach; rather, given the large number of

comparable sales in that market, the term "market value" is unambiguous.  *Id.* at *6-7.[5]  As

such, the *Singleton* court concluded that the disputed term was unambiguous and did not

include sales taxes or registration fees.  *Id.*

Stripping away irrelevant precedent, plaintiff ultimately makes the same argument

here -- that the term "market value" in the automobile's policy's definition of ACV is

---

[5] For example, "Edmunds True Market Value (TMV) pricing system helps you determine the average transaction price, or ' what others are paying,' for new or used vehicles."  "What Is True Market Value TMV Pricing," Edmunds, https://help.edmunds.com/hc/en-us/articles/206102387-What-Is-True-Market-Value-TMV-pricing (last visited Nov. 13, 2019).  Like Kelley Blue Book price, this TMV:

> [E]stimates a vehicle's average transaction price, not its "out the door" cost.  Therefore, TMV prices <u>DO</u> take into account any incentives and fees that may affect the transaction price, including:
> - manufacturer-to-dealer incentives (i.e., dealer cash)
> - destination charges
> - advertising fees (when applicable)
>
> However, TMV prices <u>DO NOT</u> include most incentives and fees that are typically applied *after* a transaction price has been determines:
> - manufacturer-to-consumer rebates (i.e., cash rebate)
> - sales tax
> - license/registration fees
> - dealer title/documentation ("doc") fees.

*Id.*

ambiguous -- and the court rejects it for the same reason as the *Singleton* court.  As in Texas, "market value" is a well-defined term under Wisconsin law, and is determined using a "three-tier assessment methodology," with the "best evidence" being "an arms-length sale of the subject property" or "reasonably comparable properties."  *Adams Outdoor Advertising Ltd. v. City of Madison*, 2006 WI 104, ¶ 34, 294 Wis. 2d 441, 717 N.W.2d 803.  If neither of these two preferred tiers of evidence is available, only then may one look to "third-tier assessment methodologies," which includes considering replacement value, cost and income approaches, among other factors.  *Id.* ¶¶ 34-35.

At least with respect to automobiles, one can hardly conceive of a marketplace with more ready, "reasonably comparable" sales data in the form of Kelley Blue Book or Edmunds valuations.  Accordingly, market value is *not* an ambiguous term under Wisconsin law, nor does it require reimbursement of sales tax, registration fees or other costs that might be incurred in actually purchasing a replacement vehicle.[6]

---

[6] As the AICPA recognizes, fair market value can have different meanings depending on its value in use, highest and best use, or upon liquidation, among numerous other measures.  AICPA, "Quick Reference Guide: Standards and Premises of Value," AICPA, at *5 https://www.aicpa.org/InterestAreas/ForensicAndValuation/Resources/FairValueforFinancialReport ing/DownloadableDocuments/FVS-FairValueReferenceGuide.pdf (last visited Nov. 13, 2019). "For state legal matters only, therefore, the term may be defined by statute or case law in the particular jurisdiction."  *Id.* at *6.  Here, the court simply finds that Wisconsin contract law dictates a straightforward, unambiguous answer as to the meaning of "market value" for a totaled automobile under the policy language at issue here, whatever ambiguity may exist in other settings or different policy language, at least given the express distinction in the policy definition itself between "market value" and "replacement costs."

ORDER

IT IS ORDERED that defendant Progressive Universal Insurance Company's motion to dismiss (dkt. #13) is GRANTED.   The clerk of court is directed to enter judgment in favor of defendant, dismissing this case.

Entered this 14th day of November, 2019.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge